UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CRIMINAL ACTION NO: 4:04-CR-017**

**UNITED STATES OF AMERICA**                                  **PLAINTIFF**

**V.**

**DONALD RAY DANIEL**                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Suppress [DN 70] by Defendant, Donald Ray Daniel. Fully briefed, this matter stands ripe for decision. For the following reasons, Defendant's Motion to Suppress is **DENIED**.

**I. BACKGROUND**

On July 3, 2003, at around 9:00 a.m., the Defendant, Donald Ray Daniel ("Daniel"), spoke with James Shirley ("Shirley") on the telephone regarding the delivery of a package. The phone conversation was recorded by Special Agents of the Drug Enforcement Agency ("DEA"). During the conversation, the Defendant told Shirley that he was aware that one of his brothers, Ronald Daniel, had been arrested the previous evening.

Shirley then allegedly made arrangements for the Defendant to pick up the package at the Kentucky Fried Chicken ("KFC") parking lot in Madisonville, Kentucky. Based on the recorded conversation, the DEA Special Agents had already established surveillance at this location. At about 9:30 a.m., David Daniel, another brother of the Defendant, drove a green Chevrolet truck into the KFC parking lot. The Defendant was a passenger in the truck.

The Defendant exited the truck, picked up a brown paper bag allegedly containing methamphetamine, and then returned to the truck. The truck then left the parking lot but was stopped shortly thereafter by the Madisonville Police Department ("MPD").

Both the Defendant and his brother were handcuffed and taken to the interrogation room at the MPD. It is at this point where the stories diverge. DEA Special Agents Atkins and Anderson testified that Atkins read the Defendant his Miranda rights off a standard DEA card. Both Agents indicated that they interviewed the Defendant for no more than ten minutes and that they never coerced the Defendant. The Agents stated that they may have mentioned to the Defendant that they already "had him for ten years," but did not remember for sure. The Agents do admit that the Defendant was not free to leave during the interview but note that at no time did the Defendant express the desire to consult with an attorney. Agent Anderson claims that he actually told the Defendant to consult with an attorney at the conclusion of the interview.

The Defendant testified that he had no recollection as to whether he received a warning of his Miranda rights but notes that he did not ask for a lawyer at any time. He testified that although the Agents did not physically coerce him, they told him that he was looking at ten years already and that he could be looking at "much more" if he did not cooperate. The Defendant believes the interview lasted for thirty to forty minutes. The Agents did not tape the interview, and the Defendant did not ask that the interview be taped.

During the interview, the Defendant responded "I had rather not say," when asked why he picked up the brown paper bag in the KFC parking lot. The Defendant also made

certain references during the interview which could be interpreted as involvement in a prior drug transaction. Defendant now seeks to suppress the contents of the interview.[1]

## II. STANDARD OF REVIEW

A defendant's waiver of Miranda rights must be found, based on the totality of the circumstances, to be voluntary, knowing, and intelligent. Moran v. Burbine, 475 U.S. 412, 421 (1986). The state has the burden of proving the voluntariness of the waiver by a preponderance of the evidence, but there must be an element of police coercion in order for a waiver to be found involuntary. Colorado v. Connelly, 479 U.S. 157, 169-71 (1986). When a defendant claims that a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary. United States v. Johnson, 351 F.3d 254, 260 (6th Cir.2003).

## III. DISCUSSION

In his motion, the Defendant raises two principal issues. First, he asserts that the Agents did not give provide him with Miranda warnings. Second, he contends that his statements were coerced. The Court will consider these issues in turn.

In a custodial interrogation, a defendant is entitled to a warning of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Both Agents Atkins and Anderson claim to have been in the room when Agent Atkins read the Defendant his Miranda rights. Defendant Atkins also testified that he read the Miranda rights verbatim from a card, and that it was

---

[1] After the hearing, the prosecutor stated that the Government would not seek to introduce Defendant's "I had rather not say" statement because of its Fifth Amendment implications.

DEA policy to do so. For his part, the Defendant admits that he cannot remember one way or the other whether he was advised of his <u>Miranda</u> rights. The preponderance of the evidence supports the Government's argument that the Defendant was advised of his <u>Miranda</u> rights shortly after the interview began. Thus, the only remaining question is whether the Defendant made his statement voluntarily or whether he was coerced.

To determine whether a confession has been elicited by unconstitutional means, "the [C]ourt looks to the totality of the circumstances concerning whether a defendant's will was overborne in a particular case." <u>Johnson</u>, 351 F.3d at 260. There are "three requirements for a finding that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." <u>Id</u>.

In applying these elements, courts have concluded that officers have some latitude in attempting to extract statements. For instance, a promise of leniency may be coercive but only if it is broken or illusory. <u>Id</u>. at 262. Merely exhorting a defendant to tell the truth does not render a confession involuntary. <u>U.S. v. Chalan</u>, 812 F.2d 1302, 1307 (10th Cir. 1987). Informing a defendant that he and his wife could go to jail and that other arrangements would have to be made for the care of their child if the defendant did not cooperate does not render his confession involuntary when these events are merely consequences of defendant's illegal acts. <u>United States v. Moore</u>, No. 95-5232, 1996 WL 121714, at *4 (4th Cir. Mar. 20, 1996). It is not coercive for officers to discuss realistic penalties or results for cooperation or non-

cooperation.  U.S. v. Ponce Munoz, 150 F.Supp.2d 1125, 1136 (D. Kansas 2001).

Here, applying the preponderance of the evidence standard, the Court concludes that Defendant's statements were voluntary and not coerced.  Even crediting the Defendant's account of the interview, the most problematic statement referred to the possibility that the Defendant may be facing more than ten years if he did not cooperate.  But such a statement is certainly not an illusory promise.  The DEA Agents merely enlightened the Defendant as to the gravity of his situation and informed him of the likely result of his cooperation.  The Defendant voluntarily chose how to proceed at that point.  Also, the Agents engaged in no physical violence, and the interview concluded with the Defendant able to leave freely.  The Agents' actions were not objectively coercive.  However, assuming that they were, the coercion was insufficient to overbear the Defendant's will as shown by the fact that toward the end of the interview, believing the Agents were twisting his words, the Defendant exercised his will and ended the interview.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress [DN 70] is **DENIED**.

cc: counsel of record
04cr-017Daniel(2)